*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* THE BERNARD BOUTET REVOCABLE LIVING TRUST.

LYNN MARINE-ADAMS, Trustee,

and

DARRELL BOUTET, KEITH BOULET, and
CHRISTINE N. HUGHES,

      Appellees,

v

DIANE BOUTET TENEROWICZ,

      Appellant.

UNPUBLISHED
January 25, 2024

No. 364575
Wayne Probate Court
LC No. 2021-864392-TV

Before: GLEICHER, P.J., and BORRELLO and SHAPIRO, JJ.

GLEICHER, P.J., *(concurring)*.

I reluctantly concur with the result reached by my colleagues in the majority. Were I writing on a clean legal slate about a preserved legal issue, I would hold unenforceable the conditions in the Bernard R. Boutet Trust requiring Boutet's daughter, Diane Tenerowicz, to identify the "biological father" of her son within 60 days of Boutet's death, and to "tak[e] all actions reasonably necessary to provide scientific evidence (including DNA) of the biological fatherhood, including the taking of any medical examinations or testing." In my view, these conditions are contrary to public policy, and invalid on that ground.

My public policy concerns rest on not only Tenerowicz's right to privacy—but that of the "biological father" as well." For whatever reasons Tenerowicz decided against telling her father or her son the name of his father, those reasons fall within the zone of her constitutionally protected right to privacy, in my view. See *Matter of Jessica XX*, 54 NY2d 417, 434 n 2; 430 NE2d 896 (1981) (COOKE, J., *dissenting*) ("Whatever the motivations of a mother not to disclose the putative

-1-

father's existence, there may well be significant privacy interests that protect that decision and militate against compelled disclosure[.]") and *Matter of Stephen*, 239 AD2d 963, 963; 659 NYS2d 588 (1997) ("The birth mother has exercised her constitutional right to privacy not to disclose the identity of the putative birth father[.]" Perhaps even more compelling here are the privacy rights of the putative fathers to remain anonymous. Tenerowicz's son is an adult, so there is not child support at issue. Tenerowicz's compliance with the trust's conditions would require the putative fathers to submit to DNA testing. They have every right to refuse such a request. Publicly identifying them, even without requesting that they submit to DNA testing, destroys their rights to keep secret highly personal information -- their long-ago love affairs with Tenerowicz.

The Third Restatement of Trusts provides that "[a]n intended trust or trust provision is invalid if . . . it is contrary to public policy." 2 Restatement Trusts, 3d, § 29(c), pp 53-54. The General Comment on this provision explains the rationale for this rule:

> The private trust is tolerated, even treasured, in the common-law world for the flexibility it offers to property owners in planning and designing diverse beneficial interests and financial protections over time, individually tailored as the particular property owner deems best to the varied needs, abilities, and circumstances of particular family members and others whom the owner chooses to benefit. Yet these societal and individual advantages are properly to be balanced against other social values and the effects of deadhand control on the subsequent conduct or personal freedoms of others, and also against the burdens a former owner's unrestrained dispositions might place on courts to interpret and enforce individualized interests and conditions. [2 Restatement Trusts, 3d, § 29, comment *i*, p 60].

Trust provisions "that tend to encourage criminal or tortious conduct on the part of beneficiaries" should not be enforced, the Restatement suggests. 2 Restatement Trusts, 3d, § 29, comment *f*, p 57. Similarly, "a policy of fostering free family interaction or privacy between individuals, or simply society's tolerance of human frailty, traditionally exempts acts of property owners (and even their outright dispositions by will) from restrictions that would apply to personally intrusive or socially dubious conditions in the distributive provisions of irrevocable trusts." 2 Restatement Trusts, 3d, § 29, comment *i*, pp 60-61. The Restatement further explains:

> Thus, although one is free to give property to another or to withhold it, it does not follow that one may give in trust with whatever terms or conditions one may wish to attach. This is particularly so of provisions that the law views as exerting a socially undesirable influence on the exercise or nonexercise of fundamental rights that significantly affect the personal lives of beneficiaries and often of others as well. [*Id*. at p 61.]

A public policy argument was not raised in the trial court, however, and would likely have been unsuccessful even had it been pursued. As the majority elucidates, our Supreme Court's decision in *In re Erickson's Estate*, 346 Mich 432, 436; 78 NW2d 256 (1956), holds that a testator may "attach to a gift in his will any lawful terms or conditions he [sees] fit." This sweeping pronouncement, which remains good law, seems to foreclose any public policy challenges to testamentary bequests beyond those that are unlawful.

The language of *Erickson's Estate*, however, potentially conflicts with MCL 700.7404, which states that "[a] trust may be created only to the extent its purposes are lawful, *not contrary to public policy*, and possible to achieve." (Emphasis added). In *In re Mardigian Estate*, 502 Mich 154, 156; 917 NW2d 325 (2018), the Supreme Court rejected that a bequest to the attorney who drafted the decedent's will ran afoul of MCL 700.7404, even though a Michigan Rule of Professional Conduct "generally prohibits an attorney from preparing an instrument giving the attorney or his or her close family a substantial gift." The Supreme Court determined in *Mardigian Estate* that "the 'purposes' of the will and the trust were to bestow a gift to a friend, which in no way is at odds with public policy." *Id*. at 177. The Court continued: "Appellants fail to cite any genuine public policy that runs contrary to the purposes of *this* will and *this* trust, but instead merely take issue with the *manner* in which these instruments were formed, and thus their public policy arguments are flawed." *Id*.

*Mardigian Estate* is readily distinguishable from this case. One of the "purposes" of the trust provision involving Tenerowicz compelled her to disclose intensely personal information, violating her privacy and that of the possible fathers of her son. A public policy analysis should have been undertaken to explore whether Boutet's conditional, "deadhand" bequest should be enforced. The application of "public policy" to trust conditions such should be reconsidered by our Supreme Court, particularly in light of the Legislature's adoption of MCL 700.7404.

/s/ Elizabeth L. Gleicher